Timothy M. Stubson (Bar No. 6-3144)
Crowley Fleck, PLLP
111 W. 2nd Street, Suite 220
Casper, WY 82601
(307) 265-2279
tstubson@crowleyfleck.com

William E. Trachman*
Corey C. Bartkus*
(*pro hac vice pending)
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@mslegal.org

Kimberly S. Hermann*
Braden H. Boucek*
(*pro hac vice pending)
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Telephone: (770) 977-2131
khermann@southeasternlegal.org
bboucek@southeasternlegal.org

*Attorneys for Plaintiff Leisl M. Carpenter*

**FILED**

**5:00 pm, 5/24/21**

**Margaret Botkins
Clerk of Court**

# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| LEISL M. CARPENTER,<br><br>    Plaintiff,<br><br>        v.<br><br>THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture, and<br><br>ZACH DUCHENEAUX, in his official capacity as Administrator of the Farm Service Agency,<br><br>    Defendants. | No.   21-CV-103-F<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Leisl M. Carpenter is a Wyoming rancher and the young mother of a 19-month old son. She is of Danish, Norwegian, and Swedish ancestry. She and her husband Tim sell weaned calves, grass finished or corn fed beef, grass hay, livestock protein supplements, custom hay, and cull cows and bulls. Because she has no job other than ranching, her entire family's income stems from the ranch. Although she meets the definition of "socially disadvantaged" for some purposes relating to the U.S. Department of Agriculture's Farm Service Agency loans, she is not covered by the American Rescue Plan Act, signed in March 2021. On the other hand, if she were a different race—regardless of whether she was affected by COVID-19 or in fact needed loan forgiveness—the federal government would automatically forgive her loan.

Ms. Carpenter brings this complaint against Defendants Thomas J. Vilsack, Secretary of the United States Department of Agriculture, and Zach Ducheneaux, Administrator of the Farm Service Agency (FSA), as follows:

## **INTRODUCTION**

1.     The Constitution requires that "all racial classifications imposed by government must be analyzed by a reviewing court under strict scrutiny." *Johnson v. California*, 543 U.S. 499, 505 (2005) (internal quotation marks omitted). "We have insisted on strict scrutiny in every context, even for so-called 'benign' racial classifications, such as race-conscious university admissions policies, race-based preferences in government contracts, and race-based districting intended to improve minority representation." *Id.* at 505 (internal citations omitted).

2.     Equal protection under the law is the cornerstone of modern-day American constitutional jurisprudence. It is the principle etched into our nation and was "[p]urchased at the price of immeasurable human suffering." *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 240 (1995) (Thomas, J., concurring in part and concurring in judgment).

3.     In March 2021, however, Congress opted to enshrine into law race classifications that divide American citizens by skin color, and which are unmoored from any interest that the government may have in remedying past discrimination.

4.      In the American Rescue Plan Act of 2021, H.R. 1319, 117th Cong. (2021) ("ARPA"), Congress allotted billions of dollars in debt relief to "socially disadvantaged" farmers and ranchers.  The program will erase the debts of certain farmers and ranchers who took out loans, but only for farmers or ranchers of races.

5.      The program does so by providing a payment in an amount up to 120 percent of the outstanding indebtedness, to remain available until expended, for the cost of loan modifications and payments under this section.

6.      A "socially disadvantaged farmer or rancher" is defined by federal law, 7 U.S.C. § 2279(a)(5), as "a farmer or rancher who is a member of a socially disadvantaged group."

7.      In turn, a "socially disadvantaged group" is a "group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." 7 U.S.C. § 2279(a)(6).

8.      The United States Department of Agriculture ("USDA") interprets the phrase "socially disadvantaged group" to include explicit racial classifications.  Indeed, to be eligible for ARPA's debt relief, farmers and ranchers must be "Black, American Indian/Alaskan Native, Hispanic, or Asian, or Hawaiian/Pacific Islander." *See American Rescue Plan Debt Payments FAQ*, at Question 1, at https://www.farmers.gov/americanrescueplan/arp-faq (last visited, May 23, 2021).

9.      The USDA considers Plaintiff Leisl Carpenter to be "socially disadvantaged" in some respects regarding her loan status, although not under ARPA. *See id.* at Question 1 ("Section 2501 [of the Food, Agriculture, Conservation and Trade Act of 1990] does not include gender. While some women may be eligible [for ARPA debt relief] due to their race or ethnicity, gender is not an eligible criterion in and of itself, based on the law enacted by Congress.").  She is not considered to be a part of any of these racial categories and would generally be considered white or Caucasian.

10.     Defendants are responsible for running this race-based loan-forgiveness program through the Farm Service Agency.  Defendants assert that the purpose of this program is to remedy "systemic racism" within USDA and more broadly "across agriculture."

11.     The United States Constitution "forbids" discrimination by the federal government "against any citizen because of his race." *Adarand*, 515 U.S. at 216 (internal citations omitted). When the government distributes "benefits on the basis of individual racial classifications," as Defendants do in this case, the government bears the burden of meeting "strict scrutiny."  In other words, the government must prove that its discriminatory benefit is narrowly tailored and serves a compelling government interest. *Id.* at 227.  It cannot do so here.

12.     Defendants' use of race discrimination as a tool to end "systemic racism" is patently unconstitutional and should be enjoined by the Court.  Enjoining this discriminatory conduct will promote equal rights under the law for all American citizens and promote efforts to stop further racial discrimination because "[t]he way to stop discrimination on the basis of race is to stop discriminating on the basis of race." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 748 (2007) (plurality opinion).

## PARTIES

13.     Plaintiff Leisl Maria Carpenter owns a ranch in Albany County, near Laramie, in the District of Wyoming.  Ms. Carpenter is a Wyoming rancher whose family started ranching in the Centennial Valley following their immigration to the United States from Denmark, Norway, and Sweden.  In 2012, she took out a real estate loan from the FSA, which is covered under the terms of ARPA.[1]  Ms. Carpenter's Promissory Note names the FSA's office located in Wheatland, Wyoming, as the payee for the USDA.  Ms. Carpenter would be eligible for the loan forgiveness program in Section 1005 of ARPA, and future FSA loans, except for the fact that she is not a member of any of the racial groups that are eligible for loan forgiveness.

---

[1] Ms. Carpenter's loan was taken in her maiden name, Leisl Maria Stonum.

4

14.     Defendant Thomas J. Vilsack is the Secretary of Agriculture.  He is responsible for leading the USDA, which includes the FSA.  Under Section 1005 of ARPA, Defendant Vilsack is required to provide debt relief to certain farmers based on race. He is sued in his official capacity.

15.     Defendant Zach Ducheneaux is the Administrator of the FSA.  Among other things, FSA oversees certain loan programs.  Under Section 1005 of ARPA, FSA will provide debt relief to certain farmers with direct loans or USDA-backed loans based on race.  He is sued in his official capacity.

**JURISDICTION AND VENUE**

16.     This Court has jurisdiction over this complaint under 28 U.S.C. §§ 1331 and 1343 because this case presents a substantial question of federal law, specifically whether Section 1005 of ARPA—and Defendants' implementation of that section—violates the United States Constitution's guarantee of equal protection of the laws.

17.     This Court has authority to issue a declaratory judgment and to order injunctive relief and other relief that is necessary and proper pursuant to 28 U.S.C. §§ 2201 and 2202.

18.     Venue is appropriate in this district under 28 U.S.C. § 1391(e)(1).  A substantial part of the events giving rise to this claim occurred in this district, Defendants maintain one or more offices and employees in this district, a substantial part of the property subject to this action is situated in this district, and a plaintiff resides in this district.

**Ms. Carpenter is a Rancher with Outstanding Debt on an FSA Loan**

19.     Despite being the young mother of an 18-month old son, Ms. Carpenter continues to ranch in Albany County, Wyoming.

20.     Ms. Carpenter raises about 575 head of cattle and farms hay on her 160-acre ranch, which has been in her family since they homesteaded the land in 1894.

21.     Ms. Carpenter has FSA loans and is otherwise eligible for the loan forgiveness program in Section 1005 of ARPA, except that her ancestors were from Denmark, Norway, and Sweden, and she is commonly considered white or Caucasian.

5

22.     Under existing law, Ms. Carpenter would be prohibited from obtaining further loans from the Department if she received any form of debt forgiveness on her FSA loans.

23.     Ms. Carpenter's Promissory Note contains the following statement, on Page 1: "The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin . . .."

**President Biden Signs the American Rescue Plan Act**

24.     On March 11, 2021, President Biden signed ARPA into law.

25.     In a Rose Garden ceremony, President Biden emphasized that the $1.9 trillion in spending authorized by ARPA was necessary in response to COVID-19.  Biden said: "It directly addressed the emergency in this country.  Because it focuses on what people need most." *See* President Joe Biden on the American Rescue Plan and recovery, CNBC YouTube Channel, at https://www.youtube.com/watch?v=dj2zCWetr1Y (Time Stamp 3:33).

26.     In Section 1005 of ARPA, Congress appropriated "such sums as may be necessary" to pay for the cost of loan modifications and payments for "each socially disadvantaged farmer or rancher as of January 1, 2021." ARPA § 1005(a)(1)-(2).

27.     Section 1005(a) requires Defendant Vilsack to use the appropriated funds to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021." ARPA § 1005(a)(2).

28.     A "socially disadvantaged farmer or rancher" has "indebtedness" if that farmer or rancher owes money on a "direct farm loan made by the Secretary" or a "farm loan guaranteed by the Secretary." ARPA § 1005(a)(2)(A)-(B).

29.     Finally, Section 1005(a)(3) states that "the term 'socially disadvantaged famer or rancher' has the meaning given in section 2501(a) of the Food, Agriculture, Conservation, and Trade Act of 1990 (7 U.S.C. § 2279(a))." That Act defines "socially disadvantaged farmer or rancher" as "a farmer or rancher who is a member of a socially disadvantaged group." 7 U.S.C. § 2279(a)(5). "Socially disadvantaged group," in turn, is defined as "a group whose members have

6

been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." 7 U.S.C. § 2279(a)(6).

30.     Defendants Vilsack and Ducheneaux are responsible for the implementation of the loan forgiveness provisions in ARPA Section 1005.

31.     On March 25, 2021, Defendant Vilsack offered written testimony to the House of Representatives Committee on Agriculture. *See Opening Statement of Thomas J. Vilsack Before the House Committee on Agriculture – Remarks as Prepared*, (March 25, 2021), at https://www.usda.gov/media/press-releases/2021/03/25/opening-statement-thomas-j-vilsack-house-committee-agriculture (last visited, May 24, 2021).

32.     In true doublespeak fashion, Defendant Vilsack claimed that he would be committed to rooting out discrimination within the Department: "I am here today to say that racism and discrimination have no place at the Department of Agriculture. I will not tolerate it, and I am committed to rooting it out and establishing a relationship with producers that is built on a commitment to equity, trust and customer service."

33.     On March 26, 2021, Defendant Ducheneaux authored a blog post detailing how FSA intends to implement Section 1005 of ARPA. *See* Zach Ducheneaux, "American Rescue Plan Socially Disadvantaged Farmer Debt Payments," (March 26, 2021), at https://www.farmers.gov/connect/blog/loans-and-grants/american-rescue-plan-socially-disadvantaged-farmer-debt-payments. According to this document: "USDA recognizes that socially disadvantaged farmers and ranchers have faced systemic discrimination with cumulative effects that have, among other consequences, led to a substantial loss in the number of socially disadvantaged producers, reduced the amount of farmland they control, and contributed to a cycle of debt that was exacerbated during the COVID-19 pandemic."

34.     Defendant Ducheneaux explained that through ARPA, FSA will provide "historic debt relief to socially disadvantaged producers including Black/African American, American Indian or Alaskan native, Hispanic or Latino, and Asian American or Pacific Islander."

35.     According to Defendant Ducheneaux, "[a]ny socially disadvantaged borrower with direct or guaranteed farm loans as well as Farm Storage Facility Loans qualifies." Defendant Ducheneaux defines "socially disadvantaged" borrowers as only those borrowers "with direct or guaranteed farm loans as well as Farm Storage Facility Loans" and who are members of one or more of the following racial groups: "Black/African American, American Indian or Alaskan native, Hispanic or Latino, and Asian American or Pacific Islander."

36.     On or about April 12, 2021, USDA updated its website to provide further information about the payments under Section 1005 of ARPA.  The website confirms that only certain farmers will be eligible based on race: "Eligible borrowers include those who identify as one or more of the following: Black/African American, American Indian, Alaskan native, Hispanic/Latino, Asian American, or Pacific Islander." *See American Rescue Plan Debt Payments,* at https://www.farmers.gov/americanrescueplan.

37.     Although public officials have made stray comments about remedying past discrimination committed by the Department of Agriculture, Defendant Vilsack made clear the real reasons for ARPA's race classifications: "[T]hese provisions recognized that on top of the economic pain caused by the pandemic's impact on the economy and agriculture, socially disadvantaged farmers are also dealing with a disproportionate share of COVID infection rates, hospitalizations, death and economic hurt."  *See id.* ("The law provides funding to address longstanding racial equity issues within the Department and *across agriculture*.") (emphasis added).

38.     To be clear, the program at issue does not target farmers or ranchers who suffered economic pain during the COVID-19 crisis.  Nor does it target farmers or ranchers who contracted COVID-19.  It does not even target farmers or ranchers who have suffered discrimination, much less at the hands of the Department of Agriculture.  Under the relevant provisions, it forgives the loans of farmers or ranchers whose race matches the race of a group whose members have suffered discrimination, per the Department.  (A farmer or rancher who is a member of a socially disadvantaged group.)  As Secretary Vilsack stated in his testimony, part of his goal is to make it

clear to Congress and the public that "that prosperous farmers of color means a prosperous agricultural sector and a prosperous America."

39.     In fact, socially disadvantaged farmers who were previously successful claimants in class action settlements (e.g., Pigford, Keepseagle) and received debt forgiveness are eligible for further debt forgiveness. *See American Rescue Plan Debt Payments FAQ*, at Question 3.

40.     The USDA has stated that individuals who receive loan forgiveness under the ARPA will be eligible for future FSA loans. *See American Rescue Plan Debt Payments FAQ*, at Question 29 at https://www.farmers.gov/americanrescueplan/arp-faq.

41.     As for timing and process, it appears that USDA will soon be reaching out to begin providing payments to those individuals who meet the racial classifications, based on the information in USDA's files.  *See American Rescue Plan Debt Payments FAQ*, at Question 9-10 ("Question 9: Do I need to apply or take any action to receive a debt payment? A. No action on your part is needed right now."); *see id.* at Question 10 ("Details of the process and your debt payment will be reviewed with you prior to final processing.")   at https://www.farmers.gov/americanrescueplan/arp-faq.

42.     Upon information and belief, the USDA further instructs potential applicants who are "uncertain of [their demographic designation on file at FSA" to call their local service center to verify their classification on record, and to update as needed.

43.     Upon information and belief, on or about May 4, 2021, USDA sent correspondence to borrowers who have not previously designated details about their demographic information including race and ethnicity data, to "encourage" them to contact their local FSA Service center to update their demographic information in FSA records.

44.     Beginning in the week of May 24, 2021 and continuing through June 2021, Direct Loan borrowers will receive a letter from FSA, outlining the payment they will receive, and that they will need to sign and return it. Guaranteed Loan borrowers will be available within 120 days. *See American Rescue Plan Debt Payments,* at https://www.farmers.gov/americanrescueplan.

45.     The FSA will begin to process signed letters for payments in June. About three weeks after a signed letter is received, qualified socially disadvantaged borrowers will receive 20% of their qualified debt by direct deposit which may be used for tax liabilities and other fees associated with payment of the debt. Payments will be issued on a rolling basis. *See American Rescue Plan Debt Payments,* https://www.farmers.gov/americanrescueplan.

46.     Defendants are currently implementing and will continue to implement Section 1005 of ARPA to impose a race-based loan forgiveness program. Defendants' implementation includes the expenditure of federal funds, and Defendants will begin processing letters for payment in June of 2021.

### Injury to Ms. Carpenter

47.     Plaintiff is a rancher who has an FSA direct farm loan and is otherwise eligible for loan forgiveness under Section 1005 of ARPA.

48.     But because Plaintiff is white, she is ineligible for the loan forgiveness benefit under Section 1005 of ARPA as administered by Defendants.

49.     Were Plaintiff eligible for the loan forgiveness benefit, she would have the opportunity to make additional investments in her property, expand her ranch, purchase equipment and supplies, and otherwise support her family. Because Plaintiff is ineligible to receive loan forgiveness solely due to her race, she has been denied the equal protection of the laws and has therefore suffered harm.

50.     Because Plaintiff is considered white, any other farm loan forgiveness she could obtain from USDA would not be up to 120% and would not cover tax liabilities.

51.     If Plaintiff obtained any form of forgiveness of her loan, then she would not be eligible for any future direct or guaranteed loans, or loan forgiveness on a direct loan, from the Department.

### CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

(Fifth Amendment of the United States Constitution)
(Equal Protection Violation)

52.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

53.     "[T]he moral imperative of racial neutrality is the driving force of the Equal Protection Clause, and racial classifications are permitted only as a last resort." *Bartlett v. Strickland*, 556 U.S. 1, 21 (2009). "[A]ll racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny. *Adarand*, 515 U.S. at 227. "Under strict scrutiny, the government has the burden of proving that racial classifications are narrowly tailored measures that further compelling governmental interests." *Johnson v. California*, 543 U.S. at 505. When the government invokes an interest as meeting strict scrutiny, the court must closely examine how the government has gone about satisfying that interest. *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 299 (2013) ("Strict scrutiny does not permit a court to accept a school's assertion that its admissions process uses race in a permissible way without closely examining how the process works in practice.").

54.     "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013).

55.     Section 1005 of ARPA imposes racial classifications. Farmers or ranchers with direct farm loans, guaranteed farm loans, or Farm Storage Facility Loans qualify for loan forgiveness only if they are members of one of the following racial groups: Black/African American, American Indian or Alaskan native, Hispanic or Latino, or Asian American or Pacific Islander.

56.     Defendants are responsible for interpreting and implementing Section 1005 of ARPA.

57.     Although Plaintiff is a rancher with a direct FSA loan, and otherwise eligible for the loan forgiveness program under Section 1005 of ARPA, she is ineligible for this federal benefit because she is white.

58.     Plaintiff is harmed by the Defendants' racial classifications because, but for Plaintiff's skin color, she would be receiving up to 120% of the value of her outstanding debt and she would use that money to benefit her ranch and family.

59.     The racial classifications under Section 1005 of ARPA do not satisfy strict scrutiny. There is no compelling interest in providing subsidies by scattershot to farmers and ranchers simply on the basis of their membership in a racial group.

60.     Remedying societal discrimination does not constitute a compelling interest under the Fifth Amendment's equal protection principles. *Fisher v. Univ. of Texas at Austin*, 570 U.S. at 318 (permitting such an interest would have "no logical stopping point").

61.     Nor is Section 1005 narrowly tailored, since it is both underinclusive—it does not provide relief to white or Caucasian farmers who have contracted COVID-19 or suffered due to COVID-19—and overinclusive—it includes farmers or ranchers who may meet the racial qualifications, but who have not contracted COVID-19, suffered uniquely due to COVID-19, or suffered discrimination on any basis.

62.     Because the racial classifications under Section 1005 of ARPA are not narrowly tailored to serve a compelling government interest, they cannot survive strict scrutiny.

## SECOND CLAIM FOR RELIEF

### (Illegally Allowing Future Eligibility)

63.     Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

64.     Prior to the enactment of the ARPA, the Department was prohibited, by statute, from providing future loans to persons who receive forgiveness of a direct or guaranteed loan, except in narrowly specified circumstances. *See* 7 U.S.C. § 2008h(b).

12

65.     Prior to the enactment of the ARPA, the Department was prohibited, by statute, from providing debt forgiveness on a direct loan to any person who had previously received debt forgiveness. *See* 7 U.S.C. § 2008h(c).

66.     As the ARPA was originally proposed, Section 1005 provided that the provision of a payment under paragraph (2) to a socially disadvantaged farmer or rancher shall not affect the eligibility of such farmer or rancher for a farm loan after the date on which the payment is provided. *See* American Rescue Plan Act of 2021, 117 H.R. 1319, 2021 H.R. 1319, 117 H.R. 1319, Title I, § 1005(3) ("EFFECT ON ELIGIBILITY.-- Notwithstanding any other provision of law, the provision of a payment under paragraph (2) to a socially disadvantaged farmer or rancher shall not affect the eligibility of such farmer or rancher for a farm loan after the date on which the payment is provided.") (proposed language).

67.     This provision did not make it into Section 1005 as enacted.

68.     Yet on or about May 21, 2021, citing no statutory authority, the Department stated, *ipse dixit*, on its website that persons who receive loan forgiveness under the ARPA will be eligible for future FSA loans. *See American Rescue Plan Debt Payments FAQ*, at Question 29 https://www.farmers.gov/americanrescueplan/arp-faq.

69.     Because the Department has no authority to treat anyone who received loan forgiveness as eligible for future loans, but has said that it will do so anyway, it will be acting unlawfully.

**<u>RELIEF REQUESTED</u>**

Plaintiff respectfully requests that this Court:

      A.     Enter a declaratory judgment that the racial classifications under Section 1005 of ARPA are unconstitutional under the Equal Protection principles of the Fifth Amendment of the United States Constitution.

      B.     Enter a declaratory judgment that Plaintiff is eligible to receive loan forgiveness pursuant to ARPA.

      C.     Enter a declaratory judgment that providing further loans to those who receive loan forgiveness is illegal.

      D.     Enter an order permanently enjoining Defendants from applying racial classifications when determining eligibility for loan modifications and payments under Section 1005 of ARPA.

      E.     Enter an order permanently enjoining Defendants from declaring Plaintiff ineligible for future FSA loan participation, to the extent that such participation is permitted for recipients of ARPA relief.

      F.     In the alternative, enjoin Defendants from enforcing Section 1005 of the American Rescue Plan of 2021 in its entirety and enjoining Defendants from distributing loan assistance under Section 1005 to farmers and ranchers.

      G.     Enter an award for nominal damages of $1.00.

      H.     Award Plaintiff such costs and attorney fees as allowed by law; and

      I.     Grant Plaintiff such other and further relief as the Court deems appropriate.

1

2

DATED this 24th day of May, 2021.

3

Respectfully submitted,

4

5

/s/ Timothy M. Stubson

6

Timothy M. Stubson (Bar No. 6-3144)
Crowley Fleck, PLLP

7

111 W. 2nd Street, Suite 220
Casper, WY 82601

8

(307) 265-2279
tstubson@crowleyfleck.com

9

10

William E. Trachman*
Corey C. Bartkus*

11

(*pro hac vice pending)
Mountain States Legal Foundation

12

2596 S. Lewis Way
Lakewood, Colorado 80227

13

Telephone: (303) 292-2021
Facsimile: (303) 292-1980

14

wtrachman@mslegal.org

15

16

Kimberly S. Hermann*
Braden Boucek*

17

(*pro hac vice pending)
Southeastern Legal Foundation

18

560 W. Crossville Road, Suite 104
Roswell, GA  30075

19

Telephone: (770) 977-2131
khermann@southeasternlegal.org

20

bboucek@southeasternlegal.org

21

Attorneys for Plaintiff Leisl M. Carpenter

22

23

24

25

26

27

28