Timothy M. Stubson (Bar No. 6-3144)
CROWLEY FLECK, PLLP
111 W. 2nd Street, Suite 220
Casper, WY 82601
(307) 265-2279
tstubson@crowleyfleck.com

William E. Trachman (*pro hac vice*)
MOUNTAIN STATES LEGAL FOUNDATION
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@mslegal.org

Braden Boucek (*pro hac vice*)
Kimberly S. Hermann (*pro hac vice*)
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Telephone: (770) 977-2131
bboucek@southeasternlegal.org
khermann@southeasternlegal.org

*Attorneys for Plaintiff Leisl M. Carpenter*

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| LEISL M. CARPENTER, | Case No. 0:21-cv-00103-NDF |
| Plaintiff, | |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO LIFT STAY AND TO DISMISS AS MOOT, MEMORANDUM IN SUPPORT THEREOF [ECF NO. 37 AND 38]** |
| THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture, and | |
| ZACH DUCHENEAUX, in his official capacity as Administrator of the Farm Service Agency, | |
| Defendants. | |

President Biden signed the American Rescue Plan Act on March 11, 2021. *See* Pub. L. No. 117-2, § 1005 (2021). Section 1005 of that law provided COVID-19 debt relief of up to 120% of debt to farmers and ranchers, based on their race. Subsequently, several lawsuits were filed against Section 1005, including one in the Eastern District of Wisconsin, which was filed on April 29, 2021. *See Faust v. Vilsack*, 1:21-cv-00548-WCG (D. Wisc., Apr. 29, 2021). On June 10, 2021, Judge Griesbach of that court issued the first order halting the implementation of Section 1005. *See Faust v. Vilsack*, 519 F. Supp. 3d 470, 475 (D. Wisc., 2021) ("Here, Defendants lack a compelling interest for the racial classifications."); *see id.* at 478 ("Defendants are enjoined from forgiving any loans pursuant to Section 1005 until the Court rules on Plaintiffs' motion for a preliminary injunction.").

By that time, however—June 10, 2021—Defendants had unfortunately already begun implementing Section 1005. They provided debt relief on at least 4 loans based exclusively on race, apparently accounting for at least around $1 million. *See* Declaration of William D. Cobb, *Faust v. Vilsack*, 1:21-cv-00548-WCG (filed June 8, 2021) (Exhibit 1); Brasher, *Democrats add farm debt relief to climate funding as Senate passage nears*, at 2 (Aug. 6, 2022) (Exhibit 2) ("USDA made nearly $ 1 million in forgiveness payments before the program was shut down."). They had also at least offered to provide forgiveness on a fifth loan. And USDA had likely credited back hundreds of loan payments to certain borrowers, again based solely on the race of the borrower. Plaintiff, of course, was ineligible for any of these benefits; she therefore suffered differential treatment on the basis of her race, which has never been remedied. And the mere repeal of Section 1005 does not suffice to undo her injuries stemming from prior implementation of the statute.

1

To this day, there has never been a full account of USDA's implementation of Section 1005. However, the Court may take notice that the government has offered no declaration—to meet its heavy burden now—stating that due to the repeal of Section 1005, all previous implementation of Section 1005 has been unwound, and that the playing field has been appropriately equalized, without regard to race. *See* ECF 38, at 7 (stating only that Section 1005 was never "fully" implemented).

Thus, this Court may still grant that relief to Plaintiff, and restore constitutional balance. *See Miller v. Vilsack*, No. 4:21-cv-0595-O, *20 (N.D. Tex., July 1, 2021) (Exhibit 3) ("Plaintiffs are suffering a continuing and irreparable injury based on the direct effects of the race- and ethnicity-based application process.").[1] Such relief constitutes *prospective* relief, and does not require a waiver of sovereign immunity, *see Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), or even an amendment of the Complaint, because Plaintiff's prayer for relief has never been limited to merely asking the Court to strike down Section 1005. This Court should thus permit the case to proceed apace, in order to vindicate Plaintiff's constitutional rights.

## STANDARD OF REVIEW

"[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks omitted). By contrast, "[a]s long as the parties have a concrete interest, *however small*, in the outcome of the litigation, the case is not moot." *Id.* at 172 (emphasis added). The burden is on the government to establish mootness; and that burden is a heavy one, when the government relies on its own conduct. *See West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) ("That burden is

---

[1] Note that this Order is not available on Westlaw.

'heavy' where, as here, the only conceivable basis for a finding of mootness in the case is the respondent's voluntary conduct.") (internal brackets and quotation marks omitted); *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010) ("Voluntary actions may, nevertheless, moot litigation if two conditions are satisfied: (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) *interim relief or events have completely and irrevocably eradicated the effects of the alleged violation*.") (emphasis added) (internal quotation marks omitted); *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*, No: 19-CV-205-NDF, 2020 WL 10356243, *3 (D. Wyo., Feb. 13, 2020) (same).

"It is no small matter to deprive a litigant of the rewards of its efforts … Such action on grounds of mootness would be justified only if it were absolutely clear that the litigant no longer had any need of the judicial protection that it sought." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 224 (2000). Here, the government fails to meet the exceedingly high standard of "absolutely clear." Unless Defendants can carry their burden of establishing that it has restored the state of play that existed prior to the implementation of Section 1005—or that Plaintiff and others similarly situated are entitled to similar benefits as those who received debt relief under Section 1005—there is more for this Court to do. *See also American Wild Horse Preservation Campaign v. Jewell*, No: 14–CV–0152–NDF, 2015 WL 11070090, *5 (D. Wyo., Mar. 3, 2015) (reversed on other grounds) ("Because of this, and assuming Petitioners prevail on the merits, a determination can be issued with real-world effect, whether it is an order to return horses or to cure a procedural irregularity. Therefore, Petitioners' claims are not moot.").

**ARGUMENT**

Under the Equal Protection principles of the Fifth Amendment, the government has a duty not only to enact laws equally, but to generally maintain its benefits programs equally, without regard to race. *See Regents of University of California v. Bakke*, 438 U.S. 265, 289-90 (1978) ("The guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color. If both are not accorded the same protection, then it is not equal."); *see also Vitolo v. Guzman*, 999 F.3d 353, 366 (6th Cir. 2021) ("It has been twenty-five years since the Supreme Court struck down the race-conscious policies in *Adarand*. And it has been nearly twenty years since the Supreme Court struck down the racial preferences in *Gratz*. As today's case shows once again, the way to stop discrimination on the basis of race is to stop discriminating on the basis of race.").

Under Section 1005, Plaintiff was treated unequally because of her race. Every court to consider the question has held that Section 1005 was likely unconstitutional. But the government argues that this case is moot because USDA will not further implement Section 1005; in other words, the government merely avers that will not inflict additional injuries onto the Plaintiff under Section 1005.

But Defendants fail to establish that merely forgoing inflicting new injuries suffices for mootness. And because this Court may yet remedy Plaintiff's ongoing injury by requiring Defendants to claw back unconstitutional payments, Defendants have not "completely and irrevocably eradicated the effects of the alleged violation," and cannot establish that this matter is moot. *See Rio Grande Silvery Minnow*, 601 F.3d at 1110 ("The crucial question is whether granting a present determination of the issues offered will have some effect in the real world.") (internal

quotation marks omitted); *see also Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2012) ("[W]here a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint.").

## I.   Defendants Engaged in Race-Based Implementation of Section 1005 Before June 10, 2021, and Injured Plaintiff.

At the outset, there is no doubt that Section 1005 was a race-based program. Section 1005 of ARPA expressly contemplated that the federal government would treat farmers and ranchers differently based on race. *See Holman v. Vilsack*, No. 21-1085-STA-jay, 2021 WL 2877915, *1 (W.D. Tenn., Jul 8, 2021) ("Farmers, such as Plaintiff, who have USDA loans and who are white/Caucasian are not considered to be socially disadvantaged and, thus, are not eligible for debt relief regardless of their individual circumstances."); *see id.* at *9 ("Under Section 1005, 'Black, American Indian/Alaskan Native, Hispanic, or Asian, or Hawaiian/Pacific Islander' farmers qualify for debt relief but not farmers of other races or ethnicities regardless of their financial condition and regardless of whether they obtained any financial relief during the pandemic."); *Miller v. Vilsack*, No. 4:21-cv-0595-O, *2 (N.D. Tex., July 1, 2021) ("Plaintiffs held qualifying FSA loans on January 1, 2021 but are white, making them ineligible for the funds under the Act.") (attached as Exhibit 3); *Faust*, 519 F. Supp. 3d at 476 ("Defendants make the extraordinary argument that racial discrimination inflicts no harm at all.").

Defendants undeniably provided COVID-19 loan forgiveness under Section 1005, based on race before being enjoined. *See Faust*, 519 F. Supp. 3d at 477 ("Defendants have already started to forgive loans, and the 8,580 farmers and ranchers who were sent offer letters represent approximately 49% of the loans that will be forgiven under the program."). Thus, implementation of Section 1005 occurred, and was ongoing until the order in *Faust* on June 10, 2021.

The Court in Wisconsin cited a June 8, 2021 declaration filed by USDA employee William D. Cobb in the *Faust* Matter. *See* Exhibit 1. In the Declaration, Mr. Cobb made the following statements:

> 28.    On Friday, May 28, 2021, to test the effectiveness of the procedures FSA established to deliver ARPA Section 1005 payments, FSA mailed five offer letters to eligible recipients in New Mexico. The state was selected based in part on having one of the larger volumes of direct loan borrowers eligible for ARPA and a high level of experienced staff. The eligible accounts were selected based on the borrowers being sole proprietorships rather than entities, and past interactions with FSA that reflected a willingness to be part of a pilot initiative.
>
> 29. On June 3, 2021, three of the five eligible recipients involved in the initial testing returned an accepted offer to FSA. *Payments were processed for the three eligible test recipients on that date.*
>
> 30. On June 7, 2021, the fourth eligible test recipient returned an accepted offer. *That payment was processed on Tuesday, June 8, 2021.*

Exhibit 1, at ¶¶ 28-30 (emphasis added). Thus, Defendants have acknowledged that at least 4 loans were forgiven under Section 1005, prior to the program's implementation being halted, with an additional offer to forgive a fifth loan pending as of June 8, 2021. Additional payments may have been made before Section 1005 was halted, although even 4 or 5 loans being forgiven is sufficient to end the Court's inquiry into mootness.

Note that Mr. Cobb's Declaration was signed and submitted on June 8, 2021—two days prior to the Temporary Restraining order being entered. Additional payments may have been processed in those days. *See also* Exhibit 1, at ¶ 32 ("Now that its procedures have been tested, FSA anticipates beginning to *process* and mail offer letters for 8,580 accounts on June 9, 2021.") (emphasis added). Indeed, the Wisconsin court issued a temporary restraining order because it recognized that USDA was trying to move as quickly as possible. *Faust*, 519 F. Supp. 3d at 477

("The entire $3.8 billion that has been allocated to the program may be depleted before briefing and consideration of the motion for a preliminary injunction.").

On top of the loan forgiveness payments, Mr. Cobb indicated that USDA planned to reverse prior payments made by Section 1005 recipients, at a rate of 700-800 borrowers per week:

> 23. 6,836 of the Farm Loan Program direct loan accounts have payments made after January 1, 2021. These payments must be reversed from the account to establish an accurate outstanding indebtedness on January 1, 2021, in order to calculate a payment in accordance with Section 1005 of ARPA. *FSA estimates that these reversals will require up to 9 weeks to complete at an estimated rate of 700 to 800 eligible recipients per week.*

Exhibit 1, at ¶ 23 (emphasis added). While it is currently unknown how many borrowers were actually credited back their payments made after January 1, 2021, it hardly matters. At this point, the government has failed to carry its substantial burden of showing that the case is moot, and that these payment reversals were themselves reversed.

By contrast, there can be no doubt that Defendants' forgiveness of some loans based solely on race injured Plaintiff. *See, e.g.*, *Miller v. Vilsack*, Exhibit 3, at 20 ("Plaintiffs are suffering a continuing and irreparable injury based on the direct effects of the race- and ethnicity-based application process."). Indeed, several courts enjoined Section 1005 because they held that even a partial deprivation of constitutional rights was technically irreparable. *Wynn v. Vilsack*, 545 F.Supp.3d 1271, 1290 (M.D. Fla., 2021) ("The harm he purports to suffer is the denial of his right to equal protection–his exclusion, solely on account of his race, from eligibility for an extraordinary government benefit under Section 1005. This constitutional harm is a real harm."); *Holman*, 2021 WL 2877915, *12 ("Therefore, even if Plaintiff obtained financial relief after a trial on the merits, he would have suffered irreparable harm merely by the deprivation of his constitutional rights during the pendency of this matter.").

Until the government addresses the loan payments that have already been dispensed, Plaintiff continues to be injured. Moreover, the recipients of Section 1005 benefits have no right to keep the ill-gotten gains of their race-based loan forgiveness, even if it is difficult for the government to remedy its unconstitutional program once it commenced. *See Wynn*, 545 F. Supp. 3d at 1293 ("Likewise, if Section 1005 is discriminatory, SDFRs have no legitimate right to the proceeds of a facially unconstitutional legislative enactment."); *Miller v. Vilsack*, Exhibit 3, at 22 ("[T]he inherent harm from an unlawful government-run racially discriminatory program is detrimental to the public interest.").

Indeed, a ruling that the instant dispute is moot would create perverse incentives for public officials: they would have an interest in doing as much unconstitutional activity as quickly as possible, with as little transparency as possible, before invidious race discrimination could be enjoined by courts, followed by a simple repeal of the program. That cannot be the appropriate result. In the end, the government has inflicted an ongoing injury, one that it has failed to satisfy its burden of proof of showing it has resolved.

## II.     There is no Bar to Courts Remedying the Effects of Unconstitutional State Action After Repeal of a Program.

The government's ongoing injury is redressable. It is firmly within this Court's power to order the Defendants to unwind, to the best of their ability, the implementation of Section 1005. Moreover, sovereign immunity is not a bar to relief, because plaintiffs seek prospective relief only.

Courts have long held that it is plainly permissible to order government officials to undo the constitutional damage that they have done in the past. *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and

flexibility are inherent in equitable remedies."); *see id.* at 16-17 ("[A] school desegregation case does not differ fundamentally from other cases involving the framing of equitable remedies to repair the denial of a constitutional right. The task is to correct, by a balancing of the individual and collective interests, the condition that offends the Constitution.").

There is no *per se* bar to courts correcting ongoing injuries merely because the injury had its genesis in the past. *See Milliken v. Bradley*, 433 U.S. 267, 290 (1977) ("That the programs are also 'compensatory' in nature does not change the fact that they are part of a plan that operates prospectively to bring about the delayed benefits of a unitary school system. We therefore hold that such prospective relief is not barred by the Eleventh Amendment."). And the waiver of sovereign immunity found in 5 U.S.C. § 702 applies to equitable suits for specific relief, even when such relief would require monetary payments. *See, e.g., Zellous v. Brouadhead Assocs.*, 906 F.2d 94 (3d Cir. 1990) (a plaintiff seeking a payment that they are entitled to is not barred under sovereign immunity); *Texas American Banc-shares v. Clarke*, 740 F. Supp. 1243 (N.D. Tex. 1990) (a plaintiff may recover funds that he is entitled to under federal law). Surely, the same is true for unwinding payments that were made in violation of the Constitution.

Indeed, in numerous contexts, courts have held that government actors owe a duty to correct the wrongs of the past, if an injury lingers. *See Thomas S. by Brooks v. Flaherty*, 902 F.2d 250, 255 (4th Cir. 1990) ("If the present conditions under which class members live do not meet constitutional requirements as explained in *Youngberg*, or if a patient is presently suffering from unconstitutional conditions imposed while in the hospital, the decree provides appropriate prospective relief."); *see id.* at 255 ("The decree addresses the present needs of the patients."); *Ayala v. Armstrong*, No. 1:16-cv-00501-BLW, 2017 WL 3659161, *2 (D. Idaho, Aug. 24, 2017)

("Here, the State of Idaho's past unconstitutional acts have led to 'continuing conditions of inequality' for same-sex couples who desired to marry but were unconstitutionally denied that right by the State of Idaho.").[2]

The fact that the Defendants invoke sovereign immunity is of no matter. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690 (1949) ("A second type of case is that in which the statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional."); 5 U.S.C. § 702 ("An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States…").

A court may freely impose duties on public officials to prospectively comply with the Constitution, even if that means correcting past mistakes. *See Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) ("Here, the injunctions Flint seeks as related to past violations serve to expunge from University records the 2003 censure and 2004 denial of his Senate seat, which actions may cause Flint harm."); *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007) ("We are specifically required by *Ex parte Young* to examine whether there exists an ongoing violation of federal law.") (internal citation omitted); *Clark v. Cohen*, 794 F.2d 79, 84 (3d Cir. 1986) ("Given the square holding in *Milliken II* that a federal court may order state officials to fund from the state treasury remedial measures found necessary to undo the harmful effects of

---

[2] Defendants' efforts to defend Section 1005 have also been substantially undermined by the program's repeal. While no court ever accepted USDA's argument that Section 1005 was likely to survive strict scrutiny, courts at least evaluated those arguments seriously. There is hardly any colorable argument that there is a compelling government interest pursued by a narrowly tailored means in partially implementing a statute that is later repealed.

past constitutional violations, we hold that the Commonwealth defendants' eleventh amendment argument is meritless.").

To be sure, some courts have suggested that "clawing back" the loan forgiveness offered by Section 1005 is *impractical*. *See Wynn*, at 1292 ("The debt relief cannot be clawed back or undone …"). However, these statements are *dicta* that once bore on the necessity for implementing a stay-put injunction, owing to the difficulties involved with providing relief after-the-fact. *See Wynn*, 545 F. Supp. 3d at 1292 ("The violation of this right is imminent because in the immediate future, the Government will provide up to 120% debt relief to qualifying SDFRs, but not to Plaintiff solely because of his race. This, he has shown, is an actual constitutional harm that cannot be undone."). But the government has never averred that it is actually impossible to undo its implementation of Section 1005. Even if it were difficult, this Court can plainly order the government to address its constitutional infraction, to the best of its ability. *Accord Wynn*, 545 F. Supp. 3d at 1295 ("As noted by the Supreme Court, 'once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation.'").

In any event, the government may not sustain an argument regarding mootness based on mere impracticality alone. *See Chafin*, 568 U.S. at 176 ("However small that concrete interest may be due to potential difficulties in enforcement, it is not simply a matter of academic debate, and is enough to save this case from mootness.") (internal brackets and quotation marks omitted); *id.* at 177 ("Such relief would of course not be fully satisfactory, but with respect to the case as whole, even the availability of a partial remedy is sufficient to prevent a case from being moot.") (internal brackets and quotation marks omitted); *U.S. v. Hahn*, 359 F.3d 1315, 1323 (10th Cir. 2004) (en

banc) ("Further, the Supreme Court has held that even the availability of a partial remedy is sufficient to prevent a case from being moot.") (internal quotation marks omitted).

Separately, and admittedly, in ruling on a motion for stay, the court in *Holman* suggested that forgiving only 4 loans under Section 1005 was a *de minimis* constitutional injury. *See Holman v. Vilsack*, 582 F. Supp. 3d 568, 581 (W.D. Tenn. 2022) ("[T]he approval was limited to four recipients as part of a processing test. Any injury suffered by Plaintiff as the result of this limited approval is *de minimis*.").

With respect to the court in *Holman*, constitutional injuries are never *de minimis*. First, as a matter of the factual record, no court—including the *Holman* court—has ever had before it the full record of the implementation of Section 1005, before it was enjoined on June 10, 2021. But second, and more importantly, the weight of precedent strongly suggests that there is no such thing as a *de minimis* exception to an injury caused by invidious racial discrimination. *See, e.g.*, *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 712 (9th Cir. 1997) ("More important, we can find no authority, and appellees have cited none, for a *de minimis* exception to the Equal Protection Clause. … Race discrimination is never a 'trifle.'"); *Berkley v. U.S.*, 287 F.3d 1076, 1088 (Fed. Cir. 2002) (relying on *Monterey Mechanical*); *Billings v. Madison Metro. Sch. Dist.*, 259 F.3d 807, 814 (7th Cir. 2001) ("Although the effect on the student from this relatively minor and transitory discrimination might well have been minimal, especially when compared with the situations in more pervasive and enduring educational discrimination, our faithfulness to constitutional principles does not permit us to overlook it or to declare it a *de minimis* matter."); *Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988) ("A violation of constitutional rights is never *de minimis*, a phrase meaning so small or trifling that the law takes no account of it."); *Fennell v. Marion*

*Independent School Dist.*, 963 F. Supp. 2d 623, 635-36 (W.D. Tex. 2014) (relying on the above cases to hold that being "criticized and embarrassed" in front of classmates stated an equal protection injury); *Brazell-Hill v. Parsons*, No. 2:17-cv-912, 2020 WL 4748545, *10 (S.D. Oh., Aug. 17, 2020) ("[D]ifferential treatment on the basis of race by school officials is a constitutional violation, and there is no exception for 'de minimus violations.'"); *accord Lutheran Church-Missouri Synod v. F.C.C.*, 141 F.3d 344, 351 (D.C. Cir. 1998) ("While there is a textual basis under Title VII for drawing such a line, the Equal Protection Clause would not seem to admit a *de minimis* exception."); *Martinson v. Menifee*, No. 02 Civ. 9977(LTS)(HBP), 2007 WL 2106516, *9 (S.D.N.Y., Jul 18, 2007) ("Unlike claims of retaliation, there is no *de minimis* qualification constraining a plaintiff's ability to sustain claims brought under the Equal Protection Clause."); *Thomas v. Bartow*, No. 10-C-557, 2010 WL 11619701, *1 (E.D. Wisc., Jul. 20, 2010) (denying a prisoner's claim that he was denied ice cream to due to his race on *Iqbal* grounds, while still noting that "there is no such thing as a *de minimis* exception to the Equal Protection Clause…") (internal quotation marks omitted).

Plaintiff's injury—which is ongoing to this day—is not alleviated at all by the idea that she was treated differently based on her race only 4 or 5 times, and not thousands of times, as was the government's original plan. *See Vitolo*, 999 F.3d at 364 ("It is indeed a sordid business to divide us up by race. And the government's attempt to do so here violates the Constitution.") (internal quotation marks and citations omitted); *Wynn*, 545 F. Supp. 3d at 1290 ("Thus, that injury—the unequal treatment based solely on race—and not merely Plaintiff's inability to benefit from Section 1005 is the harm Plaintiff will suffer in the absence of injunctive relief.").

No reason exists that prevents the government from redressing its constitutional injury.

### III.    Defendants' Cases Are Inapposite.

Defendant cites several cases for the general proposition that the repeal of a statute challenged by a plaintiff ordinarily triggers the mootness doctrine. However, none of the cases involve an equal protection challenge where the government engaged in invidious race discrimination prior to the repeal of a statute, and failed to unwind its misconduct.

In *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472 (1990), for instance, an Illinois bank holding company challenged a Florida law under the dormant commerce clause. When Congress amended the Bank Holding Company Act of 1956, it undercut the very claim asserted in the case. The Supreme Court thus held that the challenge was moot. *See id.* at 477 ("[T]he only evidence of Continental's stake in the outcome was its application to establish and operate an ISB. … Thus, the stake represented by that application was eliminated by the 1987 amendments to the BHCA, which make it clear that no matter how the Commerce Clause issues in this suit are resolved the application can constitutionally be denied."). *Lewis*, however, did not pertain to a situation like this one, where the government already has inflicted an injury that remains ongoing.

In *Kremens v. Bartley*, 431 U.S. 119 (1977), the Court evaluated a suit by mental health patients between the ages of 15 and 18, which challenged Pennsylvania's laws governing commitment to Pennsylvania mental health institutions. When Pennsylvania's law changed in the middle of the appeal, the Supreme Court held that the plaintiffs had obtained all of the relief that they sought. *Id.* at 129 ("These concerns were eradicated with the passage of the new Act, which applied immediately to all persons receiving voluntary treatment."); *id.* at 129 ("After the passage of the Act, in no sense were the named appellees 'detained and incarcerated involuntarily in mental hospitals,' as they had alleged in the complaint."). Plaintiff has not obtained all the relief she

sought. By contrast to the plaintiffs in *Kremens*, continues to seek the unwinding of Section 1005 to correct an ongoing constitutional injury.

In *Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.*, 404 U.S. 415 (1972), the Supreme Court dismissed as moot a challenge to a Florida law exempting certain church property from taxation. There, the Court held that because the challenge sought exclusively declaratory relief with respect to the taxation statute, and because Florida has amended the statute, the case was to be remanded with leave to amend the pleadings. *Id.* at 414-15 ("The only relief sought in the complaint was a declaratory judgment that the now repealed [statute] is unconstitutional as applied to a church parking lot used for commercial purposes and an injunction against its application to said lot. This relief is, of course, inappropriate now that the statute has been repealed."). By contrast, Plaintiff here has sought significantly more relief than merely the repeal of Section 1005.

Similarly, in *Camfield v. City of Okla. City*, 248 F.3d 1214 (10th Cir. 2001), the plaintiff challenged a law that precluded video rental stores from carrying an Oscar-award winning film due to alleged child pornography in the film. When the law was amended to change the scope of the law, the plaintiff's case was mooted because he had accomplished all that he had sought. *Id.* at 1223 ("Here, the Legislature deleted the 'simulated sex' language from section 1021.2 that Camfield argues is overbroad."). By contrast, Plaintiff has not yet obtained the remedy of unwinding the extant and ongoing differential treatment based on race that was caused by implementing Section 1005.

In *American Charities for Reasonable Fundraising Regulation, Inc. v. O'Bannon*, 909 F.3d 329 (10th Cir. 2018), the court dismissed as moot a challenge to Utah's permitting and registration

requirements for professional fundraising consultants. After the District Court had ruled for the Defendants, Utah amended its law. Because the new law no longer covered the plaintiff, the court deemed the case completely moot. *Id.* at 331 ("[D]uring the appeal, Utah substantially revised its law, prompting officials to concede that the new restrictions do not apply to Rainbow."). Here, by contrast, the government has never averred that Section 1005 was never implemented, or that its implementation has been fully unwound such that Plaintiff is no longer injured.

Last, Defendants cite *Kansas Judicial Review v. Stout*, 562 F.3rd 1240 (10th Cir. 2009). This case actually supports Plaintiff's theory of the case. *See id.* at 1246 ("In deciding whether a case is moot, *the crucial question is whether granting a present determination of the issues offered will have some effect in the real world*.") (emphasis added) (internal ellipses, quotation marks, and brackets omitted). In the case, the Tenth Circuit noted that certain canons of the Kansas Judicial Code were challenged as unconstitutional, but later repealed. *Id.* at 1246 ("As plaintiffs readily concede, in adopting the new canons, the Kansas Supreme Court completely eliminated the challenged portion of the Clause."). But the court noted that this was true only because an *old* injury had ceased with the repeal. *Id.* at 1246 ("[A]ny injury caused by the old Pledges and Commits Clauses has ceased because they are no longer in effect—the old canons thus cannot possibly chill the *future* speech of the plaintiffs.") (original emphasis). That is not the case here.

Plaintiff contends that her injury continues to this day. And there can be no doubt that an order by this Court to unwind payments made under Section 1005 will "have some effect in the real world." *Accord Vitolo,* 999 F.3d at 359 ("Mootness is a high hurdle. … What's more, the government must show that it has completely and irrevocably eradicated the effects of the program's race and sex preferences.") (internal quotation marks omitted). Here, as a factual matter,

the government has not established that it has completely and irrevocably eradicated the effects of its previous implementation of Section 1005.

**IV.    The Plaintiff's Prayer Requests Relief Other than Striking Down Section 1005.**

Plaintiff's complaint was filed on May 24, 2021. Of course, she had no knowledge that only days later, despite having filed her complaint, Defendants would begin forgiving loans on the basis of race. Nevertheless, the prayer for relief in her complaint fairly encompasses the unwinding of the implementation of Section 1005:

> A.      Enter a declaratory judgment that the racial classifications under Section 1005 of the ARPA are unconstitutional under the Equal Protection principles of the Fifth Amendment of the United States Constitution.
>
> …
>
> F.      In the alternative, enjoin Defendants from enforcing Section 1005 of the American Rescue Plan Act in its entirety and enjoining Defendants from distributing loan assistance under Section 1005 to farmers and ranchers.
>
> …
>
> I.      Grant Plaintiff such other and further relief as the Court deems appropriate.

ECF 1, at 14. In the complaint, Plaintiff asks the Court to declare that Section 1005 imposed unlawful racial classifications. There is no reason why that must logically preclude unwinding racial classifications that occurred before the statute was repealed. She further asked the Court to enjoin Defendants from enforcing Section 1005 "in its entirety," which Plaintiff avers must include implementation that continues to injure Plaintiff. And, at a minimum, the Court is entitled to offer Plaintiff such other and further relief as it deems appropriate.

There can be no doubt that Defendants were on notice that Plaintiff was trying to prevent Section 1005 from unlawfully discriminating against her, in any form. *Accord Xiong v. Knight Transporation, Inc.*, 77 F.Supp.3d 1016, 1026 (D. Colo. 2014) ("The Court therefore finds that Ms. Xiong's prayer for relief sufficiently put the defendant on notice that she sought all interest to which she would be entitled under the law."). And, at worst, the Federal Rules of Civil Procedure unambiguously support Plaintiff's position. *See* F.R.C.P. 54(c) ("Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); *Turner v. A. Passmore & Sons Inc.*, 341 Fed. Appx. 363, 367 (10th Cir. 2009) ("Again, this rule stresses the federal rules' simplification of procedure and rejection of formalism."); *Reynolds v. Slaughter*, 541 F.2d 254, 256 (10th Cir. 1976) ("Under the rule, which has been liberally applied, the court is not restricted to the relief set out in the pleadings; rather, it should grant the relief which is consistent with the pleadings or proof."). Indeed, the Court's duty extends to granting Plaintiff relief if she is entitled to as much. *See Kaszuk v. Bakery and Confectionery Union and Industry Intern. Pension Fund*, 791 F.2d 548, 559 (7th Cir. 1986) ("Rule 54(c) has been liberally construed, leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved.").

## CONCLUSION

Section 1005 unconstitutionally discriminated against Plaintiff based on her race. Plaintiff's injury continues if others who are similarly situated experienced a windfall based on their race. Defendants cannot come close to meeting their burden to establish that it is "absolutely clear" that the case is moot; indeed, the weight of the evidence is on the other side of the coin. For

these reasons, the Court should deny the government's motion to the extent it seeks dismissal of this matter.

Dated: September 27, 2022.                    Respectfully submitted,

                                              */s/ William E. Trachman*
                                              William E. Trachman*
                                              CO. Bar No. 45684
                                              Mountain States Legal Foundation
                                              2596 S. Lewis Way
                                              Lakewood, Colorado 80227
                                              Telephone: (303) 292-2021
                                              Facsimile: (303) 292-1980
                                              wtrachman@ mslegal.org

                                              */s/ Braden H. Boucek*
                                              BRADEN H. BOUCEK
                                              TN BPR No. 021399
                                              KIMBERLY HERMANN
                                              Southeastern Legal Foundation
                                              560 W. Crossville Road, Suite 104
                                              Roswell, GA  30075
                                              Telephone: (770) 977-2131
                                              bboucek@southeasternlegal.org
                                              khermann@southeasternlegal.org

                                              *Appearing Pro Hac Vice

                                              Timothy M. Stubson (Bar No. 6-3144)
                                              Crowley Fleck, PLLP
                                              111 W. 2nd Street, Suite 220
                                              Casper, WY 82601
                                              (307) 265-2279
                                              tstubson@crowleyfleck.com

                                              Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2022, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF system which sent notification of such filing to all counsel of record of this matter.

*/s/ William E. Trachman*
William E. Trachman