# EXHIBIT 1

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# GREEN BAY DIVISION

| | |
|---|---|
| ADAM P. FAUST, *et al.*, | ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) Civil Action No. 21-cv-548-WCG |
| THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture, *et al.*, | ) ) ) |
| *Defendants*. | ) |

## DECLARATION OF WILLIAM D. COBB

1. My name is William D. Cobb. I am over 21 years of age and fully competent and duly authorized to make this declaration. The facts in this declaration are based on my personal knowledge and are true and correct.

2. I have been employed by the United States Department of Agriculture ("USDA") Farm Service Agency ("FSA") for over 37 years. I am presently Deputy Administrator for Farm Loan Programs for the FSA and I am stationed in Washington, District of Columbia. As Deputy Administrator for Farm Loan Programs, I oversee the Farm Loan Programs policies and activities within FSA.

3. I am familiar with the statutory authorities, regulations, policies, and procedures that govern Farm Loan Programs[1] operations and loans as well as Farm Storage Facility Loans.[2]

4. Section 1005 of the American Rescue Plan Act ("ARPA"), enacted on March 11, 2021, authorizes USDA to pay up to 120% of the outstanding indebtedness, as of January 1, 2021, of certain FSA Direct and Guaranteed Farm Loans and Farm Storage Facility Loans held by socially disadvantaged farmers or ranchers.

---

[1] Farm Loan Programs are administered primarily under the Consolidated Farm and Rural Development Act of 1961 ("CONACT"), as amended (7 U.S.C. 1922, et seq.). A potential borrower must show inability to obtain sufficient credit elsewhere to qualify for a majority of these types of loans.

[2] Farm Storage Facility Loans are administered under the Commodity Credit Corporation ("CCC") Charter Act (15 U.S.C. 714, et seq.) and the Food and Conservation, and Energy Act of 2008 (7 U.S.C. 7971 and 8789). A potential borrower need not show inability to obtain credit elsewhere to qualify for these types of loans.

5. Section 1005(a)(1) of ARPA provides "for such funds as may be necessary, to remain available until expended" to make the ARPA loan payments.

6. Section 1005(a)(2) of ARPA permits the Secretary of Agriculture to provide payments to a lender directly, to an eligible applicant, or a combination of both.

7. Section 1005(a)(3) of ARPA provides that the term "socially disadvantaged farmer or rancher" has the meaning given to the term in section 2501(a) of the Food, Agriculture, Conservation, and Trade Act of 1990 (7 U.S.C. 2279(a)).

8. Section 2501(a) of the Food, Agriculture Conservation, and Trade Act of 1990 (7 U.S.C. 2279(a)) defines a "socially disadvantaged farmer or rancher" as someone "who is a member of a socially disadvantaged group," which is further defined as "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities."

9. The 120 percent payment authorized by Section 1005 includes 100 percent toward loan indebtedness as of January 1, 2021, and an additional 20 percent of that indebtedness to eligible recipients.

10. FSA published a Notice of Funds Availability ("NOFA") in the Federal Register (86 FR 28329) on May 26, 2021 ("May 2021 NOFA"), announcing the availability of funds for eligible borrowers with eligible direct loans as authorized by section 1005 of ARPA, with the exception of direct loans that no longer have collateral and have been previously referred to the Department of Treasury for debt collection for offset.

11. The May 2021 NOFA announced that a subsequent NOFA is anticipated within 120 days, or by September 23, 2021, which will address guaranteed loans and direct loans that no longer have collateral and have been previously referred to the Department of Treasury for debt collection for offset.

12. Under the May 2021 NOFA, members of socially disadvantaged groups include, but are not limited to: American Indians or Alaskan Natives, Asians, Blacks or African Americans, Native Hawaiians or other Pacific Islanders, and Hispanics or Latinos.  The Secretary of Agriculture will determine on a case-by-case basis whether additional groups qualify under this definition in response to a written request with supporting explanation.

13. Under the provisions of the May 2021 NOFA, eligible recipients do not need to take any action until receipt of a payment offer letter from FSA (form FSA-2601).  FSA is identifying eligible recipients whose demographic designations in FSA systems qualifies them as socially disadvantaged based on race or ethnicity.  Direct and guaranteed loan borrowers who have not previously provided demographic designations to FSA or believe their records are not accurate can contact their local FSA offices to verify their designations.

14. FSA anticipates sending an offer to most eligible recipients under the May 2021 NOFA within 45 days of the publication of the NOFA, or by July 10, 2021, although for recipients with accounts that require payment reversals, this process is likely to take longer, as explained further below.

15. Offer notices mailed to eligible recipients will explain:
    a. Eligibility based on current information in FSA records
    b. FSA's calculation of payments and proposed distribution of payments
    c. Loans that are not included as eligible loans and will retain unpaid balances (if any) (for example, Economic Emergency loans or loans closed or disbursed after January 1, 2021)
    d. Any eligible loans that will be addressed through the subsequent NOFA (for example, guaranteed loans).

16. Eligible recipients may accept the offer and conditions, schedule a meeting to discuss the offer with FSA prior to making a decision (for example to discuss the loan calculation), or decline the offer.

17. If an offer has not been responded to within 30 days, FSA will send a reminder letter, and make a phone call or send an email if that information is on file.

18. If an offer has not been responded to within 60 days, FSA will send a second reminder letter notifying the eligible recipient that a payment will not be processed unless contacted by the eligible recipient. Should FSA establish a final deadline to request a payment, it will be publicly announced, and final notification will be provided to eligible recipients at least 30 days in advance of the deadline.

19. If an offer is accepted, the amount to pay off the eligible direct loans will be applied directly to the eligible recipient's FSA loans and the additional 20 percent, which can be used by recipients to offset tax liabilities, will be paid directly to the eligible recipient.

20. Both the payment to FSA and the additional 20 percent to eligible recipients will be reported to the Internal Revenue Service (IRS) as income using form IRS-1099 G.

21. The estimates provided in the following paragraphs are calculated based on FSA's identification of accounts having one or more eligible recipients. An account may have more than one loan that qualifies for an ARPA payment associated with it.

22. To date, FSA has identified 15,416 eligible Farm Loan Program direct loan accounts with 28,918 outstanding eligible direct loans. The total unpaid principal and interest on those loans as of January 1, 2021, was $2,404,972,793. These numbers may increase if additional eligible recipients update their demographic information with FSA.

23. 6,836 of the Farm Loan Program direct loan accounts have payments made after January 1, 2021. These payments must be reversed from the account to establish an accurate outstanding indebtedness

on January 1, 2021, in order to calculate a payment in accordance with Section 1005 of ARPA. FSA estimates that these reversals will require up to 9 weeks to complete at an estimated rate of 700 to 800 eligible recipients per week.

24. To date, FSA has identified 186 eligible Farm Storage Facility Loan accounts with 253 outstanding eligible direct loans. These numbers may increase if additional eligible recipients update their demographic information with FSA.

25. Based on currently available information, USDA estimates that the loans covered by the May 2021 NOFA comprise 88% of the total ARPA-eligible payments that will be made to eligible accounts once Section 1005 is fully implemented.

26. Payments for the following eligible recipients will be addressed in the subsequent NOFA that will be issued by September 2021:

    a. As of May 19, 2021, FSA identified at least 2,377 accounts for eligible guaranteed Farm Loan Programs loan recipients with 3,519 outstanding eligible loans. The total unpaid principal and interest on those loans as of January 1, 2021, was estimated at $1,330,771,488. Payments for these eligible recipients will be addressed in the subsequent NOFA.

    b. As of May 24, 2021, FSA has identified 757 accounts for eligible direct Farm Loan Programs recipients with 1,489 loans with no collateral remaining that have been referred to the Department of Treasury for collection. The total unpaid principal and interest of these loans is $55,835,381.

27. Based on currently available information, USDA estimates that the loans covered by the NOFA that will be issued by September 23, 2021 comprise 12% of the total ARPA-eligible payments that will be made to eligible accounts once Section 1005 is fully implemented.

28. On Friday, May 28, 2021, to test the effectiveness of the procedures FSA established to deliver ARPA Section 1005 payments, FSA mailed five offer letters to eligible recipients in New Mexico. The state was selected based in part on having one of the larger volumes of direct loan borrowers eligible for ARPA and a high level of experienced staff. The eligible accounts were selected based on the borrowers being sole proprietorships rather than entities, and past interactions with FSA that reflected a willingness to be part of a pilot initiative.

29. On June 3, 2021, three of the five eligible recipients involved in the initial testing returned an accepted offer to FSA. Payments were processed for the three eligible test recipients on that date.

30. On June 7, 2021, the fourth eligible test recipient returned an accepted offer. That payment was processed on Tuesday, June 8, 2021.

31. Based on this very small sampling, FSA anticipates an average of 7 days from mailing of an offer letter to receipt of an accepted offer.

32. Now that its procedures have been tested, FSA anticipates beginning to process and mail offer letters for 8,580 accounts on June 9, 2021. This number accounts for all eligible Farm Loan Program and Farm Storage Facility Loan accounts under the May 2021 NOFA, except for the 6,836 accounts requiring reversal of payments received after January 1, 2021, which may take up to 9 weeks to process.

33. FSA anticipates it will require an average of 1.5 hours per account for the designated employees to coordinate and complete the validation and verification of payment amounts, and to print, copy and mail offer letters. There are approximately 209 designated employees whose primary responsibility is to process offer letters and payments. If these employees complete an average of five offers letters per day, then roughly 1,045 offer letters can be mailed per day. Thus, theoretically, the initial 8,766 accounts would require 8.3 days to complete. However, eligible recipients and designated employees are not equally disbursed among states, so completion of mailings in each state may vary, with the longest time period estimated to be 14 days based on the number of designated employees in that state.

34. The same designated employees will be tasked with balancing the preparation of outgoing offer letters with processing incoming acceptances, as well as any questions that arise from eligible recipients about the offer letters.

35. Beginning the week of June 14, 2021, FSA anticipates mailing offer letters on the final 6,836 accounts that will require payment reversals, as these reversals are completed over an estimated 9-week period at an average of rate of 700-800 per week.

36. African American, American Indian/Alaskan Native, Asian, and Pacific Islander borrowers account for a disproportionate number of disaster set-aside requests processed by FSA. The disaster set-aside loan provision allowed farmers with USDA farm loans who were affected by COVID-19 to have their next payment moved to the end of the amortization schedule. Although the aforementioned borrowers account for roughly 17.5% of FSA direct loan accounts, they account for 24.5% of disaster set-aside requests.

37. Of the 15,602 eligible recipients under the May 2021 NOFA, 299 accounts with 925 loans are currently in bankruptcy proceedings. These recipients that are currently in bankruptcy are scheduled to be sent offer letters beginning June 9, 2021.

38. As of May 31, 2021, the ratio of White borrowers who are delinquent on an eligible FSA loan was 11%, compared to 37.9 % of African American/Black borrowers, 14.6% of Asian borrowers, 17.4% of American Indian/Alaskan Natives, and 68% of Hispanic borrowers. As explained in the Frequently Asked Questions posted on the USDA website at https://www.farmers.gov/americanrescueplan/arp-faq: "USDA is not taking any adverse actions on

any eligible borrowers who do not make payments." However, the Debt Collection Improvement Act prohibits loans to those delinquent on a Federal debt, and therefore an eligible recipient's eligibility for student loans, loans from the Small Business Administration, or loans from other Federal agencies could be adversely impacted by failure to make payments on eligible USDA loans before they are paid off under ARPA Section 1005.

39. A delay in these payments could result in the foreclosure on the farms of the eligible recipients, who account for a disproportionate number of foreclosures. African American, American Indian/Alaskan Native, Asian, Pacific Islander, and Hispanics accounted for 20-24% of foreclosures in Fiscal Year 17 through Fiscal Year 19 even though they only account for 17.5% of the direct loan portfolio. While FSA has suspended acceleration and foreclosure on direct loans due to COVID-19, FSA cannot prevent other lenders from pursuing foreclosure action. Third party foreclosure accounted for 40-65% of the foreclosure on FSA borrowers during Fiscal Years 2016 through 2020.

40. Currently, new FSA loan requests for ARPA-eligible applicants do not include ARPA-eligible FSA debt in the cash flow, security analysis or loan limit determinations. Eligible recipients of payments under Section 1005 may be approved for, and have been approved for, new FSA loans on the condition that the ARPA-eligible debt is paid in full prior to loan closing. Delays in these payments will delay the closing of these new FSA loans to such borrowers.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this day of 8 June, 2021.

*William D. Cobb*

Digitally signed by WILLIAM COBB
DN: c=US, o=U.S. Government, ou=Department of Agriculture, cn=WILLIAM COBB, 0.9.2342.19200300.100.1.1=12001000062109
Date: 2021.06.08 22:15:34 -04'00'
Adobe Acrobat version: 2021.001.20155